IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 6:19CR60018-004 |
| | ) | |
| RICHARD REYNOLDS | ) | |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the parties hereto acknowledge that they have entered into negotiations which have resulted in this Agreement. The agreement of the parties is as follows:

**COUNTS OF CONVICTION AND DISMISSAL**

1. The Defendant, RICHARD REYNOLDS ("REYNOLDS"), hereby agrees to plead guilty to **Count Two** of the Indictment charging the Defendant with theft and aiding and abetting the commission of theft in the Hot Springs National Park, land acquired for the use of the United States and under the exclusive jurisdiction thereof, in violation of Title 18, United States Code, Sections 13(a) and 2 and Arkansas Code Annotated, Section 5-39-202(a)(6). If the Court accepts this Plea Agreement, once the Court has pronounced sentence, the Government will move to dismiss **Count Three** of the Indictment as it relates to this Defendant.

**ADMISSION OF FACTUAL BASIS IN SUPPORT OF GUILTY PLEA**

2. The Defendant has fully discussed with defense counsel the facts of this case and the elements of the crime to which the Defendant is pleading guilty. The Defendant has committed each of the elements of the crime to which the Defendant is pleading guilty and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

a. The Hot Springs National Park consists of land acquired for the use of the United States and which is under the exclusive jurisdiction of the United States. The Hot Springs National Park is located within the Hot Springs Division of the Western District of Arkansas.

b. In late August of 2016, National Park law enforcement officers (NPS LEOs) became aware of multiple burglaries of and thefts from large metal shipping containers located within an area in the Hot Springs National Park commonly referred to as the Graves Pit. The shipping containers were padlocked and used to store government-owned property, to include: tools; copper wiring; light fixtures; generators; and various landscaping and construction materials and equipment. The roads leading to the Graves Pit were blocked with locked gates with signs stating, "Road Closed" and "U.S. Property – No Trespassing."

c. NPS LEOs installed surveillance cameras in the area in September of 2016 in order to identify the individuals committing the burglaries and thefts.

d. On September 5, 2016, NPS LEOs were conducting a foot patrol through the Graves Pit area and observed REYNOLDS walking away from the shipping containers. The NPS LEOs made contact with REYNOLDS. REYNOLDS was subsequently arrested based upon outstanding State of Arkansas felony arrests warrants.

e. NPS LEOs subsequently reviewed the surveillance footage from September 5, 2016, and observed REYNOLDS and his co-defendant's breaking into entering the subject shipping containers at various times throughout the day and removing various items of government property stored therein. REYNOLDS was clearly depicted as one of the individuals assisting with the break-in and subsequent removal of government property

    from therein. Further, REYNOLDS is clearly identifiable and was also depicted in the surveillance video wearing the same clothes as those he was wearing at the time of his arrest.

f. NPS LEOs identified numerous items belonging to the United States Government that had been stolen from the shipping container on September 5, 2016. Those items included a leaf blower, an air compressor, and electric power tools, all with an aggregate value in excess of $1,000. The total value of the items stolen from the shipping containers from August through September 5, 2016, was over $8,000. Nearly all items were subsequently recovered over the course of the federal investigation.

g. As such, REYNOLDS hereby stipulates and agrees that surveillance footage depicts his entry into shipping containers located at the Graves Pit within the Hot Springs National Park and his and his co-defendants removal of items located therein on or about September 5, 2016. Further, based upon the surveillance video, and the statements and admissions by both REYNOLDS and his co-defendants, they were aiding and abetting each other.

h. As such, REYNOLDS hereby stipulates and agrees that a totality of the evidence clearly establishes that on or about September 5, 2016, in the Hot Springs National Park, land acquired for the use of the United States and under the exclusive jurisdiction thereof, REYNOLDS, aiding and abetting Robert West, Jeffrey Paige, and Daniel Bryant, all named co-defendants in this matter, did knowingly and purposely break into and enter shipping containers for the purpose of committing theft of property belonging to the United States Government, with said stolen property having an aggregate value exceeding $1,000.

    i. All of the above factual events and actions of REYNOLDS occurred in the Hot Springs Division of the Western District of Arkansas.

## ADVICE OF RIGHTS

3. The Defendant hereby acknowledges that he has been advised of and fully understands the following constitutional and statutory rights:

   a. to have an attorney and if the Defendant cannot afford an attorney, to have one provided to him and paid for at Government expense;
   b. to persist in his plea of not guilty;
   c. to have a speedy and public trial by jury;
   d. to be presumed innocent until proven guilty beyond a reasonable doubt;
   e. to confront and examine witnesses who testify against him;
   f. to call witnesses on his behalf;
   g. to choose to testify or not testify and that no one could force the Defendant to testify; and
   h. to have at least 30 days to prepare for trial.

## WAIVER OF RIGHTS

4. The Defendant hereby acknowledges that he understands each right with respect to each count to which he pleads guilty, and he hereby WAIVES all of the rights listed as (b) through (h) of the above paragraph.

## WAIVER OF ACCESS TO RECORDS

5. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

## WAIVER OF "HYDE" CLAIM

6. The Defendant hereby waives any claim under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note), for attorney fees and other litigation expenses arising out of the investigation or prosecution of this matter.

## EFFECTS OF BREACH OF THIS AGREEMENT BY DEFENDANT

7. The Defendant agrees that if after signing this Plea Agreement the Defendant commits any crimes, violates any conditions of release, or fails to appear for sentencing, or if the Defendant provides information to the Probation Office or the Court that is intentionally misleading, intentionally incomplete, or intentionally untruthful, or if the Defendant violates any term of this Plea Agreement, takes a position at sentencing which is contrary to the terms of this Plea Agreement or attempts to withdraw from this Plea Agreement, this shall constitute a breach of this Plea Agreement which shall release the United States from any and all restrictions or obligations placed upon it under the terms of this Agreement and the United States shall be free to reinstate dismissed charges or pursue additional charges against the Defendant. The Defendant shall, however, remain bound by the terms of the Agreement, and will not be allowed to withdraw this plea of guilty unless permitted to do so by the Court.

8. The Defendant further agrees that a breach of any provisions of this Plea Agreement shall operate as a WAIVER of Defendant's rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence and the Government shall be allowed to use and to introduce into evidence any one or more of the following:

   a. admissions against interest, both oral and written, made by the Defendant to any person;
   b. statements made by the Defendant during his change of plea hearing;

    c. the factual basis set forth in the Plea Agreement;
    d. any testimony given under oath in these proceedings or to a grand jury or a petit jury;
    e. any and all physical evidence of any kind which the Defendant has provided to the Government; and
    f. any and all information provided by the Defendant to the Government's attorneys, or to federal, state, county, and/or local law enforcement officers.

## WAIVER OF APPELLATE AND POST-CONVICTION RIGHTS

9. In exchange for the Government's concessions in this Plea Agreement, Defendant waives, to the full extent of the law, any right to appeal or to collaterally attack the conviction and sentence, including any restitution order, as follows:

    a. the Defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a);
    b. the Defendant reserves the right to appeal from a sentence which exceeds the statutory maximum;
    c. the Defendant expressly acknowledges and agrees that the United States reserves all rights to appeal the Defendant's sentence as set forth in 18 U.S.C. § 3742(b), and *U.S. v. Booker*, 125 S. Ct. 738 (2005);
    d. the Defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct;
    e. the Defendant waives the right to appeal the District Court's determination of the amount of restitution and the Court's subsequent restitution order, if any; and
    f. the Defendant waives the right to appeal the District Court's determination of any forfeiture issues and the Court's subsequent forfeiture order, if any.

## MAXIMUM PENALTIES

10. The Defendant hereby acknowledges that he has been advised of the maximum penalties for the Count to which he is pleading guilty. By entering a plea of guilty to **Count Two** of the Indictment, the Defendant agrees that he faces:

## COUNT TWO

    a. not more than six (6) years imprisonment;
    b. a fine of up to $10,000;

    c. both imprisonment and fine;
    d. a term of supervised release for not more than three (3) years which begins after release from prison;
    e. a possibility of going back to prison if the Defendant violates the conditions of supervised release; and
    f. a special assessment of $100.00 for the count of conviction.

## **CONDITIONS OF SUPERVISED RELEASE**

11. The Defendant acknowledges that if a term of supervised release is imposed as part of the sentence, the Defendant will be subject to the standard conditions of supervised release as recommended by the United States Sentencing Commission and may be subject to other special conditions of supervised release as determined by the Court. The standard conditions of supervised release are as follows:

    a. The Defendant shall report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs the Defendant to report to a different probation office or within a different time frame;
    b. After initially reporting to the probation office, the Defendant will receive instructions from the court or the probation officer about how and when to report to the probation officer, and the Defendant shall report to the probation officer as instructed;
    c. The Defendant shall not knowingly leave the federal judicial district where he is authorized to reside without first getting permission from the court or the probation officer;
    d. The Defendant shall truthfully answer all the questions asked by the probation officer;
    e. The Defendant shall live at a place approved by the probation officer. If the Defendant plans to change where he lives or anything about or his living arrangements (such as the people the Defendant lives with), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change;
    f. The Defendant shall allow the probation officer to visit the Defendant at any time at his home or elsewhere, and the Defendant shall permit the probation officer to take any items prohibited by the conditions of the Defendant's supervision that he

     observes in plain view;

g. The Defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses the Defendant from doing so. If the Defendant does not have full-time employment he shall try to find full-time employment, unless the probation officer excuses the Defendant from doing so. If the Defendant plans to change where the Defendant works or anything about his work (such as the position or the job responsibilities), the Defendant shall notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, the Defendant shall notify the probation officer within 72 hours of becoming aware of a change or expected change;

h. The Defendant shall not communicate or interact with someone the Defendant knows is engaged in criminal activity. If the Defendant knows someone has been convicted of a felony, the Defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer;

i. If the Defendant is arrested or questioned by a law enforcement officer, the Defendant shall notify the probation officer within 72 hours;

j. The Defendant shall not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or Tasers);

k. The Defendant shall not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court;

l. If the probation officer determines that the Defendant poses a risk to another person (including an organization), the probation officer may require the Defendant to notify the person about the risk and the Defendant shall comply with that instruction. The probation officer may contact the person and confirm that the Defendant has notified the person about the risk; and

m. The Defendant shall follow the instructions of the probation officer related to the conditions of supervision.

## RESTITUTION

12. According to agents with the National Park Service, restitution is not applicable as the stolen items were subsequently recovered during the course of the federal investigation.

## PAYMENT OF MONETARY PENALTIES

13. The Defendant agrees that monetary penalties to include special assessments, fine, and/or

restitution imposed by the Court will be (i) subject to immediate enforcement as provided in 18 U.S.C. § 3613c, and (ii), submitted to the Treasury Offset Program so that any federal payment such as an income tax refund or transfer of returned property the Defendant receives may be offset and applied to federal debt without affecting the periodic payment schedule ordered by the Court.

## NO OTHER CHARGES

14. The Government agrees that no other federal charges, which stem from the activities described in the Indictment, will be brought against the Defendant in the Western District of Arkansas.

## SENTENCING GUIDELINES ARE ADVISORY BUT NOT MANDATORY

15. The parties acknowledge that the Court shall consult and take into account the United States Sentencing Commission Guidelines in determining the sentence, but that the Court is not bound by the Guidelines and may sentence the Defendant to any sentence within the statutory range.

## AGREEMENT DOES NOT PROMISE A SPECIFIC SENTENCE

16. The Defendant acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case. The Defendant agrees that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court. Further, the Defendant acknowledges that the actual range may be greater than contemplated by the parties. In the event that the actual guideline range is greater than the parties expected, the Defendant agrees that this does not give him the right to withdraw his plea of guilty.

## RELEVANT CONDUCT CONSIDERED

17. At the sentencing hearing, the Government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to

Defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this Agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

## PERJURY

18. In the event that it is determined that the Defendant has not been truthful with the Court as to any statements made while under oath, this Plea Agreement shall not be construed to protect the Defendant from prosecution for perjury or false statement.

## AGREEMENT TO RECOMMEND A SENTENCE OF PROBATION

19. The United States and the Defendant agree that a sentence to a term of probation is a reasonable sentence to be imposed in consideration of the sentencing factors outlined within Title 18, United States Code, Section 3553(a). The parties hereto acknowledge that the Court is not bound by the recommendation and may impose any sentence authorized under the law.

## CONCESSIONS BY THE GOVERNMENT

20. The Government agrees not to object to a recommendation by the probation office or a ruling of the Court which awards the Defendant an appropriate-level decrease in the base offense level for acceptance of responsibility. If the offense level in the Presentence Report is 16 or greater and the Court accepts a recommendation in the Presentence Report that Defendant receive two points for acceptance of responsibility, the United States agrees to move for an additional one-point reduction for acceptance of responsibility for a total of three points. However, the Government will not be obligated to move for an additional one-point reduction or recommend any adjustment for acceptance of responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

a. falsely denies, or makes a statement materially inconsistent with, the factual basis set forth in this Agreement;
b. falsely denies additional relevant conduct in the offense;
c. is untruthful with the Government, the Court or probation officer; or
d. materially breaches this Plea Agreement in any way.

## GOVERNMENT'S RESERVATION OF RIGHTS

21. Although the Government agrees not to object to certain findings by the probation office or to rulings of the Court, it reserves the right to:

a. make all facts known to the probation office and to the Court;
b. call witnesses and introduce evidence in support of the Presentence Report;
c. contest and appeal any finding of fact or application of the Sentencing Guidelines;
d. contest and appeal any departure from the appropriate Guideline range; and,
e. defend all rulings of the District Court on appeal including those rulings which may be contrary to recommendations made or positions taken by the Government in this Plea Agreement which are favorable to the Defendant.

## NO RIGHT TO WITHDRAW THE GUILTY PLEA

22. The Government's concessions on sentencing options are non-binding and made pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the Defendant's requests or recommendations for certain findings of fact or applications of the Guidelines, the Defendant acknowledges that there is no right to withdraw the guilty plea.

## DISMISSAL OF COUNT THREE

23. The Government's agreement to dismiss Count Three of the Indictment is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. As a result, if the Court should reject the Government's motion to dismiss the agreed count in the Indictment, the Defendant shall be afforded the right to withdraw his plea pursuant to Rule 11(c)(5)(B) of the Federal Rules of Criminal Procedure.

## AGREEMENT NOT BINDING ON THE COURT

24. The parties agree that nothing in this Agreement binds the District Court to:

    a. make any specific finding of fact;
    b. make any particular application of the Sentencing Guidelines;
    c. hand down any specific sentence;
    d. accept any stipulation of the parties as contained in this Plea Agreement; and
    e. accept this Plea Agreement.

25. The Government and the Defendant acknowledge that the Court has an obligation to review the Presentence Report before it accepts or rejects this Plea Agreement.

## AGREEMENT DOES NOT BIND ANY OTHER ENTITY

26. The parties agree that this Plea Agreement does not bind any governmental entity other than the United States Attorney's Office for the Western District of Arkansas.

## SPECIAL ASSESSMENT

27. The Defendant agrees to pay $100.00 as the special assessment in this case.

## REPRESENTATIONS BY DEFENDANT

28. By signing this Plea Agreement, the Defendant acknowledges that:

    a. The Defendant has read this Agreement (or has had this Agreement read to him) and has carefully reviewed every part of it with defense counsel;
    b. The Defendant fully understands this Plea Agreement and is not under the influence of anything that could impede the Defendant's ability to fully understand this Plea Agreement;
    c. No promises, agreements, understandings, or conditions have been made or entered into in connection with the decision to plead guilty except those set forth in this Plea Agreement;
    d. The Defendant is satisfied with the legal services provided by defense counsel in connection with this Plea Agreement and matters related to it; and
    e. The Defendant has entered into this Plea Agreement freely, voluntarily, and without reservation and the Defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant.

## REPRESENTATIONS BY DEFENSE COUNSEL

29. By signing this Plea Agreement, counsel for the Defendant acknowledges that:

    a. Counsel has carefully reviewed every part of this Agreement with the Defendant and this Agreement accurately and completely sets forth the entire agreement between the United States and the Defendant;
    b. Counsel has explained the ramifications of the Plea Agreement to the Defendant, and believes that the Defendant understands this Plea Agreement, what rights are being lost by pleading guilty, and what the Government has agreed to do in exchange for the plea of guilty; and
    c. Counsel believes that the Defendant's decision to enter into this Agreement is an informed and voluntary one.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

30. The Defendant and his attorney both acknowledge that this Plea Agreement constitutes the entire Agreement of the parties. Further, all parties agree that there are no oral agreements or promises which have been made to induce the Defendant to change his plea to guilty.

Dated this __10th__ day of __October__, 2024.

_[signature]_
RICHARD REYNOLDS,
Defendant

_[signature]_
BEN HOOTEN,
Attorney for Defendant

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

By:

_[Digitally signed by BRYAN ACHORN
Date: 2024.10.10 10:24:37 -05'00']_

BRYAN A. ACHORN,
Assistant U.S. Attorney